UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

CARLA A. WOJEWODA,

                                      Plaintiff,        Case # 18-CV-244-FPG

v.                                                  DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                      Defendant.

## INTRODUCTION

Plaintiff Carla A. Wojewoda seeks review of the decision of the Social Security Administration ("SSA") to deny her Disability Insurance Benefits ("DIB") application. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 7, 11. For the reasons that follow, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

Plaintiff applied for DIB on April 24, 2014. Tr.[1] 145-46. After the SSA denied her claim, Plaintiff and a vocational expert ("VE") testified at a hearing before Administrative Law Judge Stephen Cordovani ("the ALJ"). Tr. 41-86. On December 13, 2016, the ALJ issued an unfavorable decision. Tr. 18-28. After the Appeals Council denied her request for review, Plaintiff appealed to this Court. Tr. 1-6; ECF No. 1.

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 5.

**LEGAL STANDARD**

I. **District Court Review**

In reviewing a final decision of the SSA, it is not the Court's function to "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

II. **Disability Determination**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ determines whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe," which means that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the claimant is not disabled. If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether the claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the

"Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which reflects the claimant's ability to perform physical or mental work activities on a sustained basis despite his or her impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must demonstrate that the claimant retains the RFC "to perform alternative substantial gainful work" in the national economy in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I.     The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 20. He also found that she has several severe impairments, but that those impairments do not meet or medically equal the criteria of any Listings impairment. Tr. 20-23.

Next, the ALJ determined that Plaintiff retains the RFC to perform light work[2] with additional limitations. Tr. 23-26. At step four, the ALJ concluded that Plaintiff can perform her past relevant work as a nurse supervisor and therefore found her not disabled. Tr. 27-28.

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good

## II. Analysis

Plaintiff asserts that the Court should remand this case because: (1) the ALJ mischaracterized the record evidence; (2) the VE's testimony was incorrect; and (3) the ALJ declined to give controlling weight to her treating physician's opinion.[3] ECF No. 7-1 at 7-10. The Court addresses each argument below.

### A. ALJ's Evaluation of the Record Evidence

Plaintiff asserts that the ALJ "mischaracterized the facts" related to her daily activities, collection of unemployment benefits, use of medication, and ability to sit, which the Court construes as an argument that the ALJ improperly evaluated the consistency of her statements with the record evidence. ECF No. 7-1 at 7-8.

Throughout the disability analysis, an ALJ considers the claimant's alleged symptoms and the extent to which they are consistent with the record evidence and affect her ability to perform daily activities and to work. 20 C.F.R. § 404.1529(a) (effective June 13, 2011 to Mar. 26, 2017); *see also* SSR 16-3p, 2016 WL 1119029, at *2 (S.S.A. Mar. 16, 2016). But the claimant's statements alone will not establish disability. 20 C.F.R. § 404.1529(a).

When the objective medical evidence does not substantiate the claimant's alleged symptoms, an ALJ considers: (1) the claimant's daily activities; (2) the location, duration,

---

deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

[3] Plaintiff's brief, submitted by counsel, contains only three-and-a-half pages of argument and two case citations— one to a Third Circuit decision from 1981 and another to a Western District of New York decision from 1997. ECF No. 7-1 at 7-10. The Court is not required to address undeveloped arguments; however, the Court will liberally construe the brief to avoid punishing Plaintiff for her attorney's shortcomings. *See, e.g.*, *Metro. Prop. & Cas. Ins. Co. v. Sarris*, No. 1:15-CV-780(LEK)(DJS), 2017 WL 3252812, at *15 (N.D.N.Y. July 28, 2017) (stating that "the Court will not address arguments raised without any attempt at providing legal or factual support").

frequency, and intensity of the claimant's symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate symptoms; (5) other treatment received to relieve symptoms; (6) any measures the claimant has taken to relieve symptoms; and (7) any other factors concerning the claimant's functional limitations and restrictions due to symptoms. *Id.* § 404.1529(c)(3)(i)-(vii).

A court upholds an ALJ's decision to discount a claimant's subjective complaints of pain if that finding is supported by substantial evidence. *Jackson v. Astrue*, No. 1:05-CV-01061 (NPM), 2009 WL 3764221, at *7 (N.D.N.Y. Nov. 10, 2009) (quotation marks and citation omitted). "It is the function of the Commissioner, not the reviewing court, to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Id.*

### 1. Daily Activities

First, Plaintiff contends that the ALJ improperly relied on the daily activities she described to the consultative examiners and in her Function Report in 2014 instead of crediting her 2016 hearing testimony. ECF No. 7-1 at 7-8; *see* Tr. 41-86, 181-89, 248, 253. After considering this evidence, the ALJ acknowledged Plaintiff's testimony that she performed "minimal activities" but found that her admissions at the consultative examinations and in her Function Report suggested that she was less limited than she alleged. Although Plaintiff seems to argue that her 2014 reports were somehow too old to rely on, they were made after Plaintiff's alleged disability onset date and were therefore relevant to the ALJ's consideration of her claim.

To the extent that Plaintiff's 2014 reports are inconsistent with her 2016 hearing testimony, it was it was up to the ALJ to resolve conflicting evidence. *See, e.g.*, *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (when the court reviews a denial of disability benefits it must "defer to the Commissioner's resolution of conflicting evidence"). Moreover, the ALJ did not use

Plaintiff's daily activities as the sole reason to discount her statements and he was entitled to consider them when analyzing her allegations. *See, e.g.*, *Poupore v. Astrue*, 566 F.3d 303, 307 (2d Cir. 2009) (ALJ properly discounted the claimant's subjective complaints in part based on his daily activities); *see also* 20 C.F.R. § 404.1529(c)(3)(i). Thus, the ALJ did not err on this basis.

### 2. Unemployment Insurance Benefits

Next, Plaintiff asserts that it is "completely untrue" that she collected unemployment insurance benefits while alleging disability. ECF No. 7-1 at 7-8. The ALJ pointed out that Plaintiff was laid off from her last job and then "collected unemployment benefits while looking for work." Tr. 25. The ALJ noted that receiving unemployment benefits does not preclude the receipt of disability benefits, but that it is "one of the many factors that must be considered" in determining whether a claimant is disabled. *Id.*

It is unclear when Plaintiff received unemployment benefits and when she alleged disability; Plaintiff asserts, without citation, that she was laid off in 2012, collected benefits for one year, and then alleged disability as of April 2014. Regardless of the timeline, the ALJ only briefly discussed Plaintiff's receipt of unemployment benefits, and it is clear that he did not use this as the sole factor for discounting Plaintiff's statements. *See, e.g.*, *Nix v. Colvin*, No. 15-CV-0328-FPG, 2016 WL 3681463, at *7 (W.D.N.Y. July 6, 2016) (ALJ properly considered the claimant's receipt of unemployment benefits and used it as part of his reason for discounting the claimant's statements). Accordingly, the ALJ did not err on this basis.

### 3. Medication Use

Plaintiff also asserts that the ALJ improperly implied that Plaintiff "could not be in such great pain since she only took her Tylenol codeine three times a week," because the pills "made her violently ill so she only took them when absolutely necessary." ECF No. 7-1 at 8. The ALJ

acknowledged that Plaintiff's medications allegedly caused her to "experience side effects, such as stomach problems and tiredness." Tr. 24. He ultimately concluded, however, that Plaintiff "has infrequent symptoms or that over the counter medication generally is effective in controlling her pain" because she only takes her Tylenol codeine about three times a week when her Motrin is effective. *Id.*

As noted previously, it was the ALJ's duty to resolve conflicting record evidence such as this, and he was entitled to consider Plaintiff's medication use as one factor in analyzing her assertions of pain. *See, e.g.*, *Rivera v. Colvin*, No. 1:14-CV-00816 MAT, 2015 WL 6142860, at *6 (W.D.N.Y. Oct. 19, 2015) (noting that "the ALJ was entitled to consider evidence that plaintiff pursued a conservative treatment as one factor in determining credibility"); *see also* 20 C.F.R. § 404.1529(c)(3)(iv). Accordingly, the Court finds no error in this regard.

### 4. Ability to Sit

Finally, Plaintiff asserts that it is "ridiculous" that the ALJ found her ability to sit in the car for an hour inconsistent with her report that she could only sit for 30 minutes. ECF No. 7-1 at 8. Specifically, the ALJ pointed out that Plaintiff "testified that she could only sit for 30 minutes at a time" but "also testified that she was able to sit in a vehicle for an hour to drive to the hearing," which "call[s] into question the consistency of [her] allegations." Tr. 25, 48, 59.

Again, the ALJ used this as one piece of information, among others, to discount Plaintiff's statements and to resolve conflicting record evidence. The Court finds no error on this basis.

In addition to all of the above, the ALJ also considered that, despite Plaintiff's reports of severe pain, providers noted that she was either in no or only mild acute distress and that her physical examinations were generally unremarkable. Tr. 24-25; *see* 20 C.F.R. § 404.1529(c)(2)

7

(noting that objective medical evidence is a useful indicator to help the ALJ make conclusions about the intensity and persistence of the claimant's symptoms).

For all the reasons stated, the Court finds that the ALJ properly considered the relevant factors when he analyzed the consistency of Plaintiff's statements with the record evidence and that his decision to discount those statements is supported by substantial evidence.

B.  VE Testimony

Plaintiff asserts that the VE's classification of her past work as a nurse supervisor "was not at all what she did" and therefore the ALJ could not rely on that testimony to make his step four finding. ECF No. 7-1 at 9. In a Work History Report, Plaintiff described her past work as a Licensed Practical Nurse supervisor. Tr. 190, 192. At the hearing, the VE confirmed that she reviewed Plaintiff's work history and characterized her past work as a "nurse supervisor" under *Dictionary of Occupational Titles* ("DOT") code 075.167-010. Tr. 78-79.

Plaintiff ignores the fact that the ALJ denied her claim because he found that she could perform her past work as a nurse supervisor *as it is generally performed*. Tr. 27. An ALJ denies benefits if the claimant "can meet the demands of [her] previous work, either as [she] actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). It is the claimant's burden "to show an inability to return to her previous specific job *and* an inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (citations omitted). The ALJ uses the DOT "to evaluate jobs as they are generally performed," but he may rely on a VE to "offer specific testimony to explain the requirements of particular jobs." *Emser v. Berryhill*, No. 1:16-CV-00909 (MAT), 2018 WL 3390255, at *2 (W.D.N.Y. July 12, 2018) (citations and quotation mark omitted).

The ALJ acknowledged that Plaintiff performed her past work as a nurse supervisor at the medium exertion level, but found that Plaintiff could do the job as it is generally performed at the light exertion level with the other limitations set forth in the RFC. Plaintiff does not argue that she cannot do the job as it is generally performed; she only asserts that the DOT description of the nurse supervisor position is not the same as what she did in her past job. Accordingly, the Court finds no step four error.

### C. Treating Physician Opinion

Finally, Plaintiff asserts that the ALJ improperly weighed the opinion of treating physician Gregory Jehrio, M.D., and should have contacted him instead of discounting his opinion. ECF No. 7-1 at 9-10.

An ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but he must "comprehensively set forth [his] reasons" for doing so. *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2) (the SSA "will always give good reasons" for the weight afforded to a treating source's opinion).

When a treating physician's opinion is not given controlling weight, an ALJ considers the following factors to determine how much weight it should receive: (1) whether the source examined the claimant; (2) the length, nature, and extent of the treatment relationship; (3) whether the source presented relevant evidence to support the opinion; (4) whether the opinion is consistent with the record as a whole; (5) whether a specialist rendered the opinion in his or her area of

9

expertise; and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)-(6).

Dr. Jehrio completed a medical opinion form wherein he assessed Plaintiff's ability to perform work-related activities, to which the ALJ afforded only "little weight." Tr. 26, 318-21. Plaintiff asserts that the ALJ "did not give the correct weight" to Dr. Jehrio's opinion, but she does not explain how his opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial record evidence. She merely concludes, without citing the record, that X-rays, MRIs, and treatment notes from Dr. Jehrio and her pain management doctor support the opinion.

The Court finds that the ALJ adhered to the treating physician rule, as he thoroughly discussed Dr. Jehrio's opinion and offered several reasons for not affording it controlling weight. First, the ALJ noted that Dr. Jehrio's opinion was given in checklist format and that Dr. Jehrio failed to describe medical findings in support of his opinion, despite being instructed to do so. Tr. 26. The lack of relevant evidence to support Dr. Jehrio's opinion constituted a good reason to discount that opinion. *See Philpot v. Colvin*, No. 5:12-CV-291 MAD/VEB, 2014 WL 1312147, at *19 (N.D.N.Y. Mar. 31, 2014) ("[The treating physician]'s opinion was largely a 'checklist' form, which she did not complete and she did not support her checklist selections by reference to medical evidence or detailed clinical findings. The ALJ acted within her discretion in discounting the opinion on this basis.") (citation omitted); 20 C.F.R. § 404.1527(c)(3) (an ALJ will give more weight to an opinion that contains relevant evidence like medical signs and laboratory findings).

Second, the ALJ found that Dr. Jehrio's own examination notes did not support his opinion. Tr. 26. Specifically, the ALJ noted that one month before Dr. Jehrio completed the opinion form, his examination of Plaintiff was unremarkable aside from spinal tenderness, and Plaintiff was not

10

in acute distress and exhibited normal gait, extremities, strength, and reflexes. Tr. 26 (citing Tr. 272). Other treatment notes from Dr. Jehrio reveal similarly unremarkable examination findings. *See, e.g.*, Tr. 237, 239, 245, 276-77, 291, 294. The lack of support in Dr. Jehrio's treatment notes for his opinion constituted a good reason to afford it less weight. *See, e.g.*, *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 7 (2d Cir. 2017) (summary order) (affirming the ALJ's decision to discount a treating physician's opinion where his treatment notes contradicted that opinion).

Plaintiff asserts that, if the ALJ believed Dr. Jehrio's opinion lacked support, he should have contacted Dr. Jehrio "to fill any alleged gaps" instead of discounting his opinion. ECF No. 7-1 at 10. But "[t]he mere fact that medical evidence is conflicting or internally inconsistent does not mean that an ALJ is required to re-contact a treating physician." *Micheli v. Astrue*, 501 F. App'x 26, 29 (2d Cir. 2012) (summary order). Moreover, where the record does not contain "obvious gaps" and the ALJ already has a "complete medical history," the ALJ does not have to seek additional information before rejecting a benefits claim. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (citation omitted).

There is no obvious gap in the record here. The ALJ had plenty of information before him to decide Plaintiff's case, including opinions from two consultative examiners, about 100 pages of medical records, and various non-medical evidence.

Finally, the ALJ found Dr. Jehrio's opinion inconsistent with the record as a whole, particularly treatment notes documenting unremarkable findings and the "conservative and routine nature" of Plaintiff's treatment. Tr. 26. The lack of consistency between Dr. Jehrio's opinion and the record as a whole constituted a good reason to discount that opinion. *See, e.g.*, *Freeman v. Comm'r of Soc. Sec.*, No. 17-CV-6862-FPG, 2018 WL 6605666, at *6 (W.D.N.Y. Dec. 17, 2018) ("[T]he ALJ did not err when she discounted [the treating physician]'s opinion based on its

inconsistency with other record evidence."); 20 C.F.R. § 404.1527(c)(4) (an ALJ will give more weight to an opinion that is consistent with the record as a whole).

For all the reasons stated, the Court finds that the ALJ properly considered the relevant factors when he analyzed Dr. Jehrio's opinion and that his decision to discount that opinion is supported by substantial evidence.

**CONCLUSION**

The Commissioner's Motion for Judgment on the Pleadings (ECF No. 11) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 7) is DENIED. Plaintiff's Complaint (ECF No. 1) is DISMISSED WITH PREJUDICE. The Clerk of Court will enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 17, 2019
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court